UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:16 CR 174 |
| | ) | (*related to* 2:18 CV 447) |
| JEFFREY SIMS | ) | |

**OPINION and ORDER**

Jeffrey Sims has filed a motion (DE # 323) to vacate his conviction and sentence, pursuant to 28 U.S.C. § 2255. For the reasons that follow, Sims' motion will be denied.

**I.    BACKGROUND**

On November 30, 2016, Sims was charged by way of criminal complaint with possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). (DE # 1.) He was later indicted on charges of possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Count Six), and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count Seven). (DE # 62 at 7-8; DE # 105 at 7-8.) On May 26, 2017, Sims entered into a plea agreement with the Government, in which he agreed to plead guilty to both charges. (DE # 132.)

During his change of plea hearing, the Government gave the following representation of the factual basis for Sims' plea:

> If this case went to trial, the Government would show that, through wire interceptions of the phone of a man named Deandrea Davis, law enforcement learned that Jeffrey Sims would periodically text Davis' phone with the terms "450" or "150" or other amounts, and then Davis would periodically text back to Mr. Sims that he should come through or go to the alley and other various responses.
>
> Law enforcement suspected that Mr. Sims was texting for an amount of a

> controlled substance. Law enforcement would note that on a pole camera near Deandrea Davis' home, Sims would periodically come by, usually by on [sic] a bicycle, stop at the home, for a few minutes, and leave. Law enforcement believed this is where a transaction took place.
>
> To test their theory, on September 23, 2016, after Sims and Davis had followed their pattern of exchanging text messages, law enforcement stopped Sims on his bicycle for an investigative stop after he had gone to Deandrea Davis' home.
>
> A search was performed, and the Defendant had 11.9 gross grams of cocaine on him that was field-tested, and it was in the form and appearance that the officers believed was cocaine base. Also on his person was a Smith & Wesson revolver Model 36.
>
> The Government would proffer that, given the frequency with which the drugs were ordered and the amount found on the Defendant, he was possessing the drugs for distribution rather than for personal use; and because the firearm was on Mr. Sims' person when he was delivering money or taking drugs from someone else, the Government would say the gun was used for protection of the drugs and drug proceeds while being delivered to and from Davis by the Defendant.

(DE # 325 at 14-16.) The court asked Sims if he agreed with the Government's representation of the facts. (*Id.*) After consulting with his counsel, the following discussion occurred between Sims and the court:

> A.  Yes, I agree with that the prosecutor, he - - what the prosecutor said, with one small exception, that all of the stuff, you know, the drugs that I purchased, some of it was for personal use, you know. But I am guilty of possessing it and everything, but I am - - you know, I do use, and a portion of that was for my personal use.
>
> **BY THE COURT:**
>
> Q.  So a portion was for personal use, a portion was for sale or distribution; correct?
>
> A.  Yes, Sir.
>
> **THE COURT:** Okay. Mr. McGrath, that doesn't change the factual basis?

2

**MR. MCGRATH:** No, that's fair enough, and I'm sure it's more accurate.

**BY THE COURT:**

Q. Okay. Then all of the other representations made are all true, correct?

A. Correct.

(*Id.* at 16-17.) Sims proceeded to plead guilty to both Counts Six and Seven. (*Id.* at 17.) The court accepted Sims' guilty plea. (DE # 182.)

The final presentence report (PSR) drafted by the Probation Office, to which neither party objected, calculated the amount of drugs attributable to Sims. (DE # 225.) The PSR included a chart that had over 30 instances over a three-week period in which Sims ordered drugs from Davis. (*Id.* at 5.) The chart indicates that on several occasions Sims placed multiple orders in a single day. (*Id.*)

The PSR initially calculated that Sims was responsible for possessing a total of 244.6 grams. (*Id.*) However, defense counsel objected to this calculation on the basis that Sims claimed that he personally used between three and five grams of each purchase himself. (*Id.*) Defense counsel argued that if Sims used as little as two grams per purchase himself, that would exclude approximately 68 grams from the drug weight calculation. (*Id.* at 5-6.) The Government agreed that Sims should be given the benefit of the doubt. (*Id.* at 6.) Accordingly, the PSR lowered its calculation of the amount that Sims intended to distribute from 244.6 to 112-196 grams. (*Id.*)

In the sentencing memoranda, both the Government and defense counsel noted that the court had the option, pursuant to *Dean v. United States*, 137 S. Ct. 1170 (2017), to

3

consider Sims' consecutive, mandatory 60-month sentence on Count Seven when determining the appropriate sentence for Count Six. (DE # 237 at 1; DE # 241 at 2.) Defense counsel asked the court to depart from the Guidelines' recommended sentencing range of 46 to 57 months' imprisonment for Count Six, and instead sentence Sims to a one-month term of imprisonment on Count Six. Defense counsel argued that such a significant departure from the Guidelines was appropriate in light of Sims' age, lack of prior criminal history, and lowered risk of recidivism. (DE # 241 at 2-3.) Defense counsel reiterated this argument during the sentencing hearing. (DE # 319 at 9.)

This court ultimately sentenced Sims to a 46-month term of imprisonment for Count Six and a mandatory, consecutive 60-month term of imprisonment on Count Seven. (DE # 250.) The court also sentenced Sims to serve a term of supervised release, forfeit certain property, and pay a special assessment. (*Id.*)

Sims now moves to vacate his conviction and sentence on the basis that he received ineffective assistance of counsel. Sims identifies three grounds in support of his motion. First, Sims argues that his counsel was ineffective because he failed to challenge the applicability of § 924(c) to Sims' case. (DE # 324 at 6.) Second, Sims argues that his counsel did not adequately argue that the court should utilize its discretion, under *Dean*, to issue a lower sentence on Count Six in light of the mandatory consecutive sentence in Count Seven. (*Id.* at 9-10.) Third, Sims argues that counsel should have challenged the drug quantity attributed to him. (*Id.* at 10.)

II.  **LEGAL STANDARD**

Section 2255 allows a person convicted of a federal crime to seek to vacate, set

aside, or correct his sentence. 28 U.S.C. § 2255. This relief is available only in limited circumstances, such as where an error is of jurisdictional or constitutional magnitude, or where there has been an error of law that "constitutes a fundamental defect which results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (internal citation and quotation marks omitted). Motions to vacate a conviction or correct a sentence ask a court to grant an extraordinary remedy to a person who has already had an opportunity for full process. *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006).

### III. DISCUSSION

#### A. Preliminary Matters

The court will address two preliminary matters before proceeding to the merits of Sims' motion. First, Sims' plea agreement contained an appeal waiver. (DE # 132 at 4.) "Appeal waivers in plea agreements are typically enforceable. However, for an appeal waiver to bar review, the issue appealed 'must fall within its scope.'" *United States v. Adkins*, 743 F.3d 176, 192 (7th Cir. 2014) (internal citations omitted). In his plea agreement, Sims agreed to waive his right to appeal his sentence and conviction "on any ground other than a claim of ineffective assistance of counsel[.]" (*Id.*) Because Sims presently makes a claim of ineffective assistance of counsel, his motion falls outside the scope of his appeal waiver and this court may consider his motion.

Second, the court need not hold an evidentiary hearing before ruling on Sims' motion. "The court should grant an evidentiary hearing on a § 2255 motion when the

5

petitioner 'alleges facts that, if proven, would entitle him to relief.'" *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009) (internal citations omitted). However, a hearing is not required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief" or if the petitioner's allegations are "vague, conclusory, or palpably incredible." *Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015); *see also* 28 U.S.C. § 2255(b). In other words, where a petitioner has failed to present facts necessary to substantiate his claim, he cannot meet the threshold requirement for entitlement to an evidentiary hearing. *Fuller v. United States,* 398 F.3d 644, 652 (7th Cir. 2005). Sims has not presented facts that, if proven, would entitled him to relief. Thus, Sims is not entitled to an evidentiary hearing.

  B.  *Ineffective Assistance Standard*

Claims for ineffective assistance of counsel are analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, "a defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial." *Massaro v. United States*, 538 U.S. 500, 505 (2003). Courts begin with the presumption that counsel's performance was not constitutionally deficient, and the petitioner did not suffer prejudice. *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir.), *cert. denied*, 139 S. Ct. 654 (2018).

To satisfy the first element of the *Strickland* test – the deficient performance prong – "a petitioner must show that the representation his attorney provided fell below an objective standard of reasonableness." *Vinyard v. United States*, 804 F.3d 1218,

6

1225 (7th Cir. 2015). "A court's scrutiny of an attorney's performance is 'highly deferential' to eliminate as much as possible the distorting effects of hindsight, and we 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (internal citation omitted). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citation omitted).

To satisfy the second element of the *Strickland* test – the prejudice prong – a petitioner must establish that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Strickland*, 466 U.S. at 694. "This does not mean that the defendant must show that counsel's deficient conduct more likely than not altered the outcome in the case. Rather, a reasonable probability is a probability sufficient to undermine confidence in the outcome, which in turn means a substantial, not just conceivable likelihood of a different result." *Harris v. Thompson*, 698 F.3d 609, 644 (7th Cir. 2012) (internal citations and quotation marks omitted).

The *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The performance prong is the same as that outlined in *Strickland*. *Id.* To establish prejudice in a case where the petitioner pled guilty, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have

7

insisted on going to trial." *Hill*, 474 U.S. at 59. *See also Morales v. Boatwright*, 580 F.3d 653, 663 (7th Cir. 2009). "[T]he petitioner must do more than simply allege 'that he would have insisted on going to trial'; he must also come forward with objective evidence that he would not have pled guilty. Objective evidence includes the nature of the misinformation provided by the attorney to the petitioner and the history of plea negotiations." *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010) (internal citation omitted).

    C.    *Applicability of 18 U.S.C. § 924(c)*

In Ground One of his motion, Sims claims that his counsel provided ineffective assistance because counsel failed to challenge the applicability of § 924(c) to Sims' case. (DE # 324 at 6.) Section 924(c)(1)(A) imposes a mandatory minimum sentence for any person who possesses a firearm "in furtherance of" a federal drug trafficking crime. Sims argues, "[t]here is no evidence that Sims was selling (re-selling) the drugs he purchased from his cousin. In fact, the 11.9 grams found on Sims at the time of his arrest would be an amount Sims would consume satisfying his own addiction." (*Id.*) Sims also argues that there was an insufficient link between the firearm discovered on his person and a drug trafficking offense. (DE # 324 at 8.) He insists that he carried the firearm for his own personal protection because he lived in a high-crime area. (*Id.*)

Sims' argument that his attorney should have challenged Count Seven on the basis that there was insufficient evidence that he intended to sell the drugs he purchased from Davis is curious given that Sims pled guilty to Count Six – possession with intent to distribute – and he does not presently challenge his attorney's assistance

8

with respect to Count Six. In light of his plea on Count Six, there is not a reasonable probability that Sims would have prevailed on an argument at trial that he was not involved in a drug trafficking offense, and his counsel was not ineffective for failing to make such an argument. *See Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel.").

Sims' plea to the underlying drug offense aside, a jury could have reasonably found that Sims purchased the drugs for distribution, in addition to his own personal use. The PSR identified more than 30 instances during a three-week period in which Sims texted Davis with an amount, sometimes multiple times in a single day, and Davis responded by telling Sims to "Come by" or identifying a location to meet. (DE # 225 at 4-5.) The PSR reported that, following these communications, law enforcement would observe Sims go to Davis' home, stay for a few minutes, and then leave. (*Id.* at 4.) When law enforcement stopped Sims after one such instance, they discovered that Sims was in possession of 11.9 grams of crack cocaine (9 grams without the packaging). (*Id.*) Given the frequency with which Sims ordered drugs from Davis, and the amount of drugs discovered on Sims' person, a jury certainly could have found that Sims possessed the drugs with the intent to distribute. *See e.g. United States v. Huddleston*, 593 F.3d 596, 601–02 (7th Cir. 2010) (defendant's possession of 5.6 grams of cocaine base, in conjunction with other indications of distribution, supported his conviction for possession with intent to distribute); *United States v. Henry*, 408 F.3d 930, 933-934 (7th Cir. 2005) (defendant's possession of 10.9 grams of crack cocaine, in conjunction with

9

other indications of distribution, supported his conviction for possession with intent to distribute). Thus, defense counsel's failure to challenge Count Seven on the basis that Sims did not intend to distribute the drugs he purchased from Davis was not objectively unreasonable.

Sims also argues that his counsel should have challenged Count Seven on the basis that Sims did not possess the gun "in furtherance of" a drug trafficking crime. To sustain a conviction under § 924(c), the Seventh Circuit has held that the "in furtherance of" element of the statute "requires that the weapon further, advance, move forward, promote or facilitate the drug-trafficking crime." *United States v. Duran*, 407 F.3d 828, 840 (7th Cir. 2005) (citing *United States v. Castillo*, 406 F.3d 806 (7th Cir. 2005)). "As numerous cases explain, the mere fact that a weapon is present at the scene of a drug crime is not enough to show a gun furthered a drug crime; there must be a showing of some nexus between the firearm and the drug selling operation." *Id.* (internal citations and quotation marks omitted).

"'One legal theory that has been advanced and unanimously accepted, is that a possessed gun can forward a drug-trafficking offense by providing the dealer, his stash, or his territory with protection.'" *United States v. Seymour*, 519 F.3d 700, 715 (7th Cir. 2008) (quoting *Duran*, 407 F.3d at 840). "[W]hen the charge is possession with the intent to distribute narcotics, a gun which is possessed (but not held, pulled, brandished or fired) plausibly could advance the possession and future distribution of narcotics . . . [by being] available to protect the possession and future distribution of the

10

drugs or the drug dealer." *Castillo*, 406 F.3d at 814-15. "The presence of a weapon serves as a potent warning to those who might contemplate stealing the drugs and a potent tool to defend against those who actually undertake to steal the contraband." *Id.* at 815.

"[P]ossession-for-protection can be confused easily with circumstantial or innocent weapon possession; therefore, . . . the evidence must specifically tie the weapon to the drug-dealing activity to ensure there was not 'innocent possession of a wall-mounted antique or an unloaded hunting rifle locked in a cupboard.'" *Duran*, 407 F.3d at 840 (internal citation omitted). Courts consider a non-exhaustive list of factors to distinguish between circumstantial possession and possession in furtherance of a drug trafficking crime. *Id.* These factors include: "the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *United States v. Amaya*, 828 F.3d 518, 525–26 (7th Cir. 2016) (quoting *Huddleston*, 593 F.3d at 602). "While these factors may be useful, they are not dispositive and are not to be applied rigidly; instead, 'we are guided primarily by common sense.'" *Id.* (quoting *Huddleston*, 593 F.3d at 602).

The evidence, as stipulated in the PSR and during the change of plea hearing, was that Sims frequently purchased crack cocaine from Davis. When law enforcement stopped Sims after one such purchase, they discovered a sizable amount of crack cocaine and a firearm. A reasonable jury could have found that the relevant factors

11

weighed against Sims, where Sims apparently brought the gun to purchase the drugs, the gun would have been highly accessible during the transaction, and the gun was in close proximity to the drugs. *See e.g. Huddleston*, 593 F.3d at 602. While juries "must find reasonable connections (beyond mere proximity) linking the firearm to the drug operation . . . a fact finder is certainly entitled to come to the common-sense conclusion that when someone has both drugs and a firearm on their person, the gun is present to further drug trafficking." *United States v. Johnson*, 916 F.3d 579, 589 (7th Cir. 2019) (internal citation and quotation marks omitted); *see also Amaya*, 828 F.3d at 526.

Perhaps Sims could have convinced a jury that his possession of the gun was entirely unrelated to the fact that he was transporting drugs – but his ability to do so was far from certain. A reasonable jury could have concluded that Sims carried the gun because he traveled with drugs, or that he carried the gun in part to protect the drugs and in part because he lived in a dangerous neighborhood. *See e.g. Huddleston*, 593 F.3d at 603 (a conviction may be sustained under § 924(c) where the defendant had duel purposes for possession of the firearm). Either way, Sims' counsel did not render objectively unreasonable assistance in failing to challenge Count Seven (at trial or on a motion to dismiss) on the basis that Sims' possession of the gun during his purchase and transportation of the drugs was not related to his drug trafficking crime.

Furthermore, Sims has not established that he suffered prejudice from his counsel's failure to raise this issue. Sims has not established that there is a reasonable probability that the outcome of his case would have been different had this issued been raised, or that he would not have pled guilty had he been advised to raise this

argument at trial. *See United States v. Harper*, 934 F.3d 524, 529 (7th Cir. 2019). Thus, Sims has failed to establish a right to relief based on Ground One.

### D. *Application of* Dean

In Ground Two, Sims claims that his counsel did not effectively argue that this court should use its discretion pursuant to *Dean*, 137 S. Ct. at 1177, to issue a lower sentence on Count Six, in light of the mandatory, consecutive 60-month sentence on Count Seven. (DE # 324 at 9-10.) In *Dean*, the Supreme Court held that a district court may take into account the fact that the defendant will be serving a consecutive mandatory sentence pursuant to § 924(c), when determining the appropriate sentence for the predicate crime. In this case, both defense counsel and the Government notified the court of its discretion under *Dean*. (*See* DE # 237 at 1; DE # 241 at 2.) Moreover, defense counsel argued in the sentencing memorandum, and again at sentencing, that this court should utilize its discretion and impose a sentence significantly below the Guidelines range for Count Six, in light of Sims' mandatory sentence for Count Seven. (DE # 214 at 2; DE # 319 at 10.)

Defense counsel satisfied his obligations under the Sixth Amendment. It was up to this court to determine Sims' sentence. While defense counsel's bid for a below-Guidelines sentence was ultimately unsuccessful, it was not for want of effort. Sims has not identified what more his counsel could have done to advance this argument. Moreover, he has not established that, had counsel argued the point differently, there is a reasonable probability that the outcome of his sentencing would have been different. Accordingly, Sims has not established a right to relief based on Ground Two.

*E.   Drug Weight*

Finally, Sims' motion includes an undeveloped claim that his counsel was ineffective because counsel failed to challenge the amount of drugs attributable to Sims at sentencing. (DE # 324 at 10.) Sims argues that it was Davis, not him, who was in the business of drug trafficking. (*Id.*)

The court can dismiss out of hand this latter argument. By the time of sentencing, Sims had pled guilty to possession with intent to distribute, and had admitted under oath that he purchased drugs from Davis to distribute to others.

As to Sims' claim that his counsel should have challenged the amount of drugs attributable to him in the PSR, he has not provided any reason for this court to believe that counsel's failure to mount additional challenges the Probation Office's calculations was either objectively unreasonable or prejudicial. To the contrary, the evidence in the record demonstrates that counsel's objection to the drug weight calculation successfully lowered the amount of drugs for which Sims was responsible from 244.6 grams to 112-196 grams. (DE # 225 at 5-6.) This in turn lowered Sims' offense level for Count Six from 28 to 26, U.S.S.G. § 2D1.1(c)(7) (Nov. 2016), and resulted in an 11-month decrease in the recommended Guidelines sentence. Accordingly, Sims' final argument does not establish a right to relief.

*F.   Summary*

It is not enough for this court to consider whether each alleged error individually establishes a right to relief based on ineffective assistance of counsel. "The Supreme Court insists that judges must not examine a lawyer's error (of omission or

14

commission) in isolation. It is essential to evaluate the entire course of the defense, because the question is not whether the lawyer's work was error-free, or the best possible approach, or even an average one, but whether the defendant had the 'counsel' of which the sixth amendment speaks." *Stephenson v. Wilson*, 619 F.3d 664, 666 (7th Cir. 2010) (internal citation and quotation marks omitted). This court has considered the cumulative effect of all the alleged errors Sims has identified. Even taken as a whole, Sims has not demonstrated that he was deprived of the 'counsel' guaranteed by the Sixth Amendment, or that there is a reasonable probability that the outcome of his case would have been different had his counsel raised the arguments he identifies. Accordingly, Sims' motion to vacate will be denied.

  F. *Certificate Of Appealability*

Pursuant to § 2255 Habeas Corpus Rule 11, the court must consider whether to grant or deny a certificate of appealability. A court should issue such a certificate only if the movant has made a substantial showing of the denial of a constitutional right, that is, that reasonable jurists would find debatable whether the district court correctly resolved the issues or would conclude that those issues deserve further proceedings. 28 U.S.C. § 2255; 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 337-38 (2003). In light of the controlling case law, the conditions for the issuance of a certificate of appealability are not present in this case, and no certificate will issue.

**IV.** **CONCLUSION**

For the foregoing reasons, the court **DENIES** Jeffrey Sims' motion to vacate (DE # 323) and **DENIES** Jeffrey Sims a certificate of appealability. The court **DIRECTS**

the Clerk to **ENTER FINAL JUDGMENT** dismissing the collateral civil proceeding (2:18 CV 447) with prejudice, and to give notice to defendant-movant Sims.

Date: August 7, 2020

**SO ORDERED.**

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT